You may proceed, Mr. Patrick. Thank you, Your Honor. Good morning, Your Honors, and may it please the court, Joshua Patrick on behalf of the Plaintiff and Appellant, Mitchell Alicia. Your Honors, as I'm sure the court's aware, we're here on appeal of the District Court's grant of summary judgment on the excessive force claims against both defendants and the District Court's determination that notwithstanding, the officers would have been entitled to qualified immunity here. Basically, Your Honors, in a nutshell, our argument is that the District Court drew a number of factual inferences in these defendants' favors that was improper for a summary judgment motion, and I'd like to begin by discussing that with respect to Sergeant Thomas, who is the K-9 officer here. It's important to note that when he encountered Mr. Alicia, he's in an empty swimming pool and he's fully compliant with his commands. The officer, according to Mr. Alicia's testimony, which has to be credited as true for purposes of summary judgment, tells him to stand up and show me your hands, and that's precisely what he does. He stands up and he shows him his hands. Now, at this point, we don't feel that it can be decided on the issue of summary judgment that he was not a subdued suspect. The grand factors we look at, the severity of the crime at issue, whether the suspect poses an immediate threat of safety to the officer or others, and whether he's actively assisting arrest or attempting to evade arrest by flight, if we look at the second and third factors, when the officer takes the K-9 and puts him into the empty swimming pool, the second and third factors strongly weigh Mr. Alicia's favor, at least for purposes of summary judgment they do. Mr. Patrick, the police knew, or at least had reason to believe, he was fleeing from the commission of a violent felony, correct? That's correct. And he wasn't compliant until a gun was aimed at him, right? Well, we actually dispute that fact, Judge, because Mr. Alicia testified that no officer says anything to him until he's discovered by Sergeant Thomas. So he did testify that he saw an officer at the beginning of his flight, but that officer didn't give him any command. Come on, what does he have to say? Your guy is running. He can't surrender and be protected against excessive force, but he didn't stop. He's not compliant, as near as I can tell, until there's a gun pointed at him. Well, that's true. He's not compliant until he's discovered in the yard. That's correct. Okay. Now, what do you think Officer Thomas should have done to get him actually subdued at that point? Climb into the pool? Well, that's what he testified that he intended to do anyways, and that's what he actually ended up doing. But with the help of a dog, which you object to. So what should the officer have done, in your view? Well, there's any number of things he could have done. He could have told him to lie prone on the floor, which would have alleviated a concern that he's going to jump out of the pool. He could have told him to just stand still, and he could have removed him from the pool that way. And the other officer that's named as a defendant, and this arrived shortly thereafter. So there's any number of things he could have done, but what's germane to this summary judgment analysis is what he did do, and that's he put this dog in the pool. Only in comparison to alternatives, though. And I guess my basic question is, why are those other alternatives so obvious that a jury should, that it's not just a matter of hindsight that lets us conclude that? Well, because as this court's held, and I'm just off the top of my head, the Phillips case from 2012, an officer's dynamic in the use of force encounter has to change as the circumstances change. Yes, we don't look at the situation in hindsight strictly, but at the same time, that doesn't mean that force that might be reasonable at the beginning of an encounter is per se reasonable as an encounter evolves. Well, how much time does Alicia contend pass between putting his hands in the air and the dog being boosted into the pool? He testified it was shortly after, but I think what distinguishes this case on that point from the Johnson v. Scott case is that the dog had yet to be put in the pool when he had surrendered. And I think that does make an important distinction here, because at the time that he surrenders and complies with the officer's directives to stand up and show his hands, the force that we allege used, the dog, had not been put into play yet. So the dog, it's not in the case of Johnson v. Scott of where the dog's taken off the leash and then only after a split second before the suspect is apprehended by the dog, he turns around and puts his hands up. Mr. Alicia surrenders in compliance with the officer's directives before the dog is even placed into the pool. So he hadn't even used the force yet, and that does make an important distinction. Well, if we hold that it's clearly unreasonable to use force once his hands go up, wouldn't it become impossible for officers to rely on Johnson when they're trying to make important judgment calls and they're faced with what they might view as a dubious surrender? No, I don't think that this would completely overrule a Johnson judge, and I don't think it makes it unreasonable. And I think this court's decision in Miller last year underscores this point. No, the officer's not required to take the surrender at face value. And we acknowledge the fact that, of course, there's going to be circumstances where they do have to make a split decision. But that doesn't mean that they can ignore factors that come up as the encounter changes. And if, solely from the use of force perspective, if an offender complies with the directive, if he tells him to do something and he does it, that has to factor into the use of force determination. And again, we're just saying that for purposes of summary judgment, a jury could certainly find that, well, he could have turned around and fled. But if we're construing the facts in the light most favorable to Mr. Alicia, there's really not much more he should have done. The officer told him, stand up, show me your hands, and that's exactly what he did. If the officer can still use significant force in apprehending him at that point, then from the use of force perspective, his surrender is almost irrelevant here. And we think that that's inconsistent with this court's jurisprudence on the use of force. Because it does have to change and evolve as the circumstances change and evolve. And just to sort of underscore that point, I think it's important that if we're talking about the officer's reliance on Johnson v. Scott, I think it's important, and this is one of the errors we take with defendant's position, what the district court held below, is that I don't think it's an accurate reading of Johnson v. Scott just to say that he doesn't have to take the surrendered face value. The full sentence from that opinion is, no law we know of requires Johnson v. Scott to take Johnson's apparent surrendered face value a split second after he stopped running. We can't just divorce the second half of that sentence from the first. The fact that it happened a split second before he stopped running matters. And what this court noted in Miller v. Gonzalez is, by that point, there was nothing that could be done, really. The dog had already been let off the leash. It was a split second, and the guy turns, and just a split second later, the dog apprehends him. There was really nothing the officer could have done in Johnson v. Scott to stop the use of force. It's more a question of physics than of state of mind there, right? Basically, yes. In Miller, was there someone else with the police officer there, as opposed to Thomas here, who was by himself at the time this went down? There was another officer there in Miller, yes, that's correct. But I still think that it's important to note the difference that in Miller, the issue was, okay, there's facts a jury could conclude that he had surrendered before the force was used. So that has to make a difference for purposes of this analysis. And I see that I'm into my rebuttal times. Unless there are any questions, I would rest in reserve. All right. Thank you. Mr. Beach? Thank you, Your Honors. May it please the court, David Beach, on behalf of the defendant at police, officers Aubrey Thomas and Alejandro Alvarez. The standard that brings us here is, of course, whether the officer's actions are objectively reasonable in light of all of the facts and circumstances. And all of the facts and circumstances that this court has set forth in the briefs are the individual, Mr. Alicea, who was burglarizing a home in the morning in a residential neighborhood, when a neighbor, an alert neighbor, called the police. He saw the police car drive up out the window and ran out the front door and fled several blocks north and turned east. This officer called for assistance. Mr. Alicea saw a second officer and turned and fled in a different direction, cutting through backyards, where he found a swimming pool with a five-foot rail. It was empty. His testimony, he placed both of his hands on this pool and vaulted into the pool, where he tried to hide himself from the police. At that point, the officers formed a perimeter around this residential neighborhood, and Officer Aubrey Thomas was called, along with his canine partner, Leo, to come and track. As the court correctly pointed out, the first time that Mr. Alicea complied was when he had a gun trained on him and was told to raise his hands. And the critical question that comes out of Johnson v. Scott is, was he subdued? The language of Johnson v. Scott says, It is well established that a police officer may not continue to use force after a suspect is subdued and compliant with the officer's orders. But it's written in the conjunctive. Is there a difference? Yes, sir. The compliance with hands up does not establish that he is subdued, that he is under Officer Thomas's control. So he's standing there, hands up. He stopped running. Could the officer have shot him? Could he have shot him if he felt that his safety was at risk? If the defendant, if the suspect is standing up, hands visible, compliant with orders, could the officer, under your theory, have shot him? I would say no, sir. That is deadly force. Using a canine is less than deadly force. Why was it? Well, let me put it this way. Could you address the significance of the effing punk comment together with the officer's decision to boost the dog into the pool? Yes, sir. While he's making that comment. Graham states that the underlying intent or motivation is not at issue, and I would quote, An officer's evil intentions will not make a Fourth Amendment violation. What it suggests to me is a reasonable inference. It obviously could be relevant if punitive damages came into play. But what it suggests to me is that the officer had time to make a judgment with this compliant suspect. Now, I understand Officer Thomas's testimony is completely different about what happened. But we are here on summary judgment. Right. And I think, Your Honor, that gets to the intent of the officer, which Graham instructs we do not consider. It's the question, the objective question, is this five-foot wall with a suspect on one side and an officer on the other. And the swimming pool is empty. Right. But the officer is standing over him? No. Or is he just looking over the wall? It's a five-foot wall, so he can see him, though. Yes, Your Honor. He can see his hands up. He can see over the wall. Right. But subdue means take control. He can't take control of the suspect. So? He doesn't know what's in the suspect's pockets. But he also knows he has other officers that are right in that area because, like you said, they've secured that area. They formed a perimeter so he can track. He doesn't know where they are. He doesn't know when they're going to respond. And that's the sort of how you search. How big an area is the perimeter you're talking about? Is it half a block? He had gone a block north and two blocks east when he encountered the second officer, and then he ran back two blocks to the west. So we're talking about several square blocks. Several blocks. How many officers? I know of three, Your Honor. I don't know if there were others. That's not in the record. What purpose? If we assume the petitioner, the plaintiff, was standing with his hands up, what purpose was served by releasing the dog when he was released? To subdue and control the suspect, Your Honor. Looking at the grand factors, we have a severe crime, a burglary, and we have a flight, reckless flight, twice from police. But the guy has his hands up and the officer has a gun. So how do we think he's going to hurt him? Well, in order to subdue and therefore control Mr. Allesee, he has to climb over that wall, which will expose himself to force, lethal force from this suspect who hasn't been searched. He's got full pockets and heavy sweatshirts. It gives him an opportunity to flee. Yet again, he fled twice. The only reason he stopped fleeing was the threat of deadly force from the gun. Right. And the only way Officer Thomas can then subdue him, which is what the language says, subdue and comply, is to take him into custody. He cannot do that with that wall. It would have been interesting if he had tried to fill the pool. That would have solved the problem. This court asked the question, wouldn't we be overruling Johnson? I think you would because the language says subdue and comply. And the sentence that Mr. Koulos didn't read says, but that depends critically upon the fact that the suspect is indeed subdued. There's no question that Mr. Allesee was not subdued. He had complied with one directive. Now, if he had started to vault over the pool and the officer had the gun at his disposal and he had the dog at his disposal, he could have shot him. That would have been an option. If he had tried to vault out where he had him, or he could have sent the dog. If he tried to vault out. But that is a different situation than what we had. Right. And, Your Honor, again, Johnson v. Scott is the law. This jurisdiction, the use of a dog to bite and hold a suspect in order to allow the police officer to subdue him. Who is fleeting, that's right. I mean, look, Johnson is the bang-bang case, right? Six to eight feet running behind him. You can cover that in a split second, right? That's the problem with Johnson. Here, if you take the facts in the light reasonably most favorable to the plaintiff, you've got an officer who has time to draw a gun, aim it, get the compliance, and then decide to boost the dog into the pool. Right. And, Your Honor, that's correct when you're looking at the Graham factors. He has a severe crime. He has concern about his safety and the safety of others. We don't know if this suspect, who's committed a burglary and has fled, has a gun. But certainly you don't see it. I mean, his hands are up. So it's true he doesn't know if he has a gun. But you said he can see over, right? He can see over. That's correct. And I thought Officer Thomas' explanation for putting the dog in was because he said Alessia was not showing his hands. And that would be reasonable. That is one of the difference of the facts. We're taking the facts most favorable to the plaintiff. Mr. Alessia, according to Officer Thomas, was sitting there and did not respond to his commands at all. But taking the plaintiff's facts that he was raising his hands, as we must, he still wasn't subdued. This court also addressed the use of a canine partner in Tilson v. City of Elkhart. That was a 2004 decision. There, the only matter at issue was whether or not the suspect was a drunk driver. He was trying to park his car and couldn't fit it in. The officer asked him to stop, and he did a U-turn. Let me ask you this. How much time does Officer Thomas say it takes for the other two, well, the other additional officers to get to the scene? It was after he had released the dog. I know from the suspect's report. Yeah, I'm asking how much time the officers, does Thomas say, laps between the time he puts up his hands. You know, he's pointed his gun, he puts up his hands. I don't believe he gave a specific time, was after. But, again, that is hindsight knowing that the officer is going to arrive. It's just since his summary judgment, Alicia says it was a split second later. After the dog had bitten hold, that's correct. No, before. Well, he says a split second. The dog latched onto his arm a split second later. Right, right. And, again, Your Honor, it's undisputed that Officer Thomas didn't know where the other officers were or when they were going to arrive at the time he released the dog. I see I'm getting a little short on time. The second point I wanted to address was the qualified immunity. Could you talk about Officer Alvarez? Yes, certainly. The testimony we have there from Mr. Alicia is that he grabbed him by the collar. Immediately after, he was yelling. He agrees he was yelling, pulled him over face down, a kick and a punch to the ribs and head, which he alleges causes a goose egg and a bruise. And, Your Honor, we would submit that that is objectively reasonable looking at the gram factors. Here you have a suspect, based upon his observation, who's screaming and yelling in a confrontation with Officer Thomas. Kicks to the head are reasonable with a compliant suspect? From the objective position of Officer Alvarez, he sees a screaming suspect. With the dog, the dog is still holding on to him. The dog is released, according to Alicia, is being punched by Officer Thomas at that point. And the dog has been released. The dog is out of control, right? The dog is outside of Thomas' control at that point. I believe the testimony is Officer Thomas has climbed into the pool and is now trying to secure the dog, and Officer Alvarez takes hold of Alicia by the collar. So now the dog is removed. He has Alicia by the collar while Thomas is controlling the dog. He pulls him over, takes him directly to the ground with a boot and a punch. So Alicia is trying to turn his head, which he testified to. And then Officer Alvarez pats him down, confirms that what's in his pockets is jewelry and money, not a weapon, and is able to handcuff him. Critical factor there that he acknowledges he was not handcuffed. He had not been searched. He was continuing to scream. A reasonable officer could perceive that as an extreme threat until he is able to pat down this suspect and handcuff him. Did he pat him down before he cuffed him? I believe he cuffed. I don't know the order of that, Your Honor, whether he patted him down or cuffed him first. But neither of those had been done at the time the boot and punch, Alicia ledges were administered, had been done. And that your time has expired. Yes. How much time? One minute. Your Honors, two quick points in rebuttal. First, I would like to add something to this discussion about the comment that Sergeant Thomas made before he threw the dog into the pool. I completely agree that it shows that he had the time to observe the situation. But I would also note that it doesn't run afoul of the grand factors to consider this because, as the Court noted in the Miller case, you could interpret that statement being, I'm trying to punish you. I'm not just trying to apprehend you. So that has to factor into it as well. And I also want to briefly get into the issue about Officer Alvarez. This issue that, well, he didn't really know what was happening because when he encountered the suspect he was screaming. He testified that Mr. Alicia was, quote, yelling that he just got bit by a dog and somewhere along the lines that he wanted medical attention. This isn't a confrontation where the two people are yelling at each other. He's screaming in pain. It's not objectively reasonable for purposes of summary judgment to happen upon that and say, well, it's still going to be reasonable for me to kick him in the head and punch him in the ribs. This was a punitive measure just as Sergeant Thomas's measure was, and we feel that summary judgment is inappropriate. Thank you. We'll take the case under advisement.